IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO. 25-32996 |
| **TURNER PAVING &** § | |
| **CONSTRUCTION, INC.,** § | CHAPTER 11 |
| § | |
| Debtor. | |

**FIRST AMENDED PLAN
OF REORGANIZATION, DATED JANUARY 20, 2026**

**Background for Case Filed Under Subchapter V**

    A.    **Description and History of the Debtor's Business**

Turner Paving & Construction, Inc., the above-captioned debtor and debtor in possession (the "Debtor") is a construction company that serves as general contractor for property owners and developers to provide excavation, concrete paving, and site preparation services. The Debtor is a Texas corporation, founded in 1994.

The Debtor's income is derived from its ongoing construction operations, which will be used to fund this first amended plan of reorganization (the "Plan"). R. Scott Turner, the sole owner and principal of the Debtor, is proposed to remain in this capacity following confirmation of the Plan, and the Debtor is to remain in legal existence.

**B.     Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive as least as much under the Plan as such claim and equity-interest holders would receive in a chapter 7 liquidation. The liquidation analysis required by 11 U.S.C. §1190 is included below:

The Debtor does not maintain inventory and operates a lean business with only two employees, several pieces of used construction equipment, and no owned real estate.  As such, in a hypothetical chapter 7 liquidation, holders of claims and interests classified into classes under this Plan would receive nothing, because there would be no assets to liquidate other than *de minimis* cash and equipment that would be sold and the proceeds paid to administrative claimants.  By continuing to operate, the Debtor is able to fund plan payments into the future to benefit all creditors. A simplified hypothetical chapter 7 liquidation analysis as of December 31, 2025, is contained below:

**Asset Disposition:**

| Asset | Estimated Net Proceeds |
|---|---:|
| Cash | $11,317 |
| Accounts Receivable | $0 |
| Equipment | $50,000 |

**Allocation of Proceeds:**

| Creditor Class | Class Total Claim Amount (Estimated) | % Recovery on Claims (Estimated) |
|---|---|---|
| Administrative Claims (Incl. Trustee Fees) | $60,000 | 100% |
| Priority Tax Claims[1] | $7,700 | 17% |
| Secured Claims | $0 | N/A |
| Unsecured Claims | $2,010,000 | 0% |

**C.    Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The Debtor must also show that it will generate enough cash over the life of the Plan to meet the required Plan payments and operate the Debtor's business. Projections that support the Debtor's ability to make all payments required by the Plan are attached to the Plan as **Exhibit A**. *See* 11 U.S.C. §1190.

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by §1191(d) of the Bankruptcy Code) for a period described in §1191(c)(2) of $35,700 per year, or $178,500 over five years. For further detail regarding the calculation of this amount and recoveries to Class 3 creditors, please review the projections attached to this Plan as Exhibit A, as well as sections 2.03, 4.01, and 5.04 of this Plan.

---

[1] Some portion of the priority tax claims have been asserted by taxing authorities as secured claims. For this reason, Class 2 (Secured Claims) is included in this Plan. To avoid any double recovery as between priority tax claims and secured claims, the amount of secured claims is estimated to be $0.

The Debtor will deposit the $178,500 in projected disposable income by making monthly payments in accordance with the payment schedule attached hereto as **Exhibit B**. The payment schedule begins with $2,000 per month on the Effective Date, and this amount will gradually increase to $3,500 (monthly) payments beginning in March 2029 (resulting in an average payment of $2,975 per month over the course of this Plan's payment schedule) (such payments, the "Plan Payments"). The Plan Payments will be paid to Class 3 creditors on a *pro rata* basis. In no event shall holders of claims be entitled to more than their *pro rata* share of the Plan Payments. Further, no holder shall be entitled to receive more the total value of their allowed claim, if any, as may be determined by the Court. If all claims are paid in full, any remaining balance of Plan Payments shall be returned and/or retained by the reorganized Debtor, as the case may be. In light of the foregoing, the final Plan Payment may be made as late as March 31, 2031 (the exact date may change depending on the Effective Date, which is anticipated to be on or around March 1, 2026).

> **You should consult with your accountant or other financial advisor if you have any questions pertaining to the Projections.**

## ARTICLE 1: SUMMARY

The Plan is filed under chapter 11 of the Bankruptcy Code (the "Code") and proposes to pay creditors of the Debtor from cash flow from future business operations following confirmation of the Plan.

This Plan provides for:

> One class of priority claims;
>
> One class of secured claims;
>
> One class of non-priority unsecured claims; and
>
> One class of equity security holders.

**Payment of Non-Priority Unsecured Claims.** Non-priority unsecured creditors holding allowed claims will receive *pro rata* distributions of the Plan Payments. The total amount of these distributions over the course of the Plan's five-year payment period shall be $178,500. For further detail regarding the calculation of this amount and recoveries to Class 3 unsecured creditors, please review the projections attached to this Plan as <u>Exhibit A</u>, as well as sections 2.03, 4.01, and 5.04 of this Plan.

**Payment of Administrative Expenses and Priority Claims.** This Plan provides for full payment of administrative expenses and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.**

## ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS

**2.01: Class 1.** All allowed claims entitled to priority under §507(a) of the Code (except administrative expenses under §507(a)(2) and priority tax claims under §507(a)(8)).

**2.02: Class 2.** The claims of any secured creditors with bona fide pre-existing and perfected lien interests in property of the estate, if any, to the extent allowed as a secured claim under §506 of the Code. Some portion of priority tax claims have been asserted by taxing authorities as secured claims. For this reason, Class 2 (Secured Claims) is included in this Plan. To avoid any double recovery as between priority tax claims and secured claims, the amount of secured claims is estimated to be $0.

**2.03: Class 3.** All non-priority unsecured claims allowed under §502 of the Code. A description of how the allowed amounts of the Class 3 claim of ACT Pipe & Supply, Inc., and Fire Protection and Mechanical Services, LLC (collectively, the "ACT Entities") were determined is included below. For further detail on the plan treatment and mediated settlement between the parties see section 5.04 of this Plan and the attached <u>Exhibit C</u>.

A dispute arising between the Debtor and the ACT Entities was submitted to mediation by agreement of the parties, pursuant to a mediation order entered on October 6, 2025 [Dkt. No. 67], by the Honorable Jeffrey P. Norman. The matter

was mediated before the Honorable Marvin Isgur on December 2, 2025, resulting in a mediated settlement agreement attached to this Plan as **Exhibit C**.

Prior to the Debtor's bankruptcy case being filed on May 29, 2025, a state court action between the parties was pending (now stayed due to the automatic stay) in the Harris County District Court, Court 127, Cause No. 202153409 (the "State Court Action"), involving alleged nonpayment of contract funds owed by the ACT Entities and alleged construction defects in work performed by the Debtor.

Previously, on August 27, 2025, the Debtor filed a timely plan of reorganization under subchapter V of chapter 11 of the Bankruptcy Code [Dkt. No. 49], and the only objection thereto was filed by the ACT Entities on the objection deadline of September 30, 2025 [Dkt. No. 57]. On October 14, 2025, the ACT Entities filed a proof of claim in the amount of $8,026,574.83 [Claim No. 8]. Resolution of the ACT Entities' claim was the only impediment to a fully consensual plan confirmation process and mediation has now resolved the ACT Entities' claim.

This Plan is based on the Debtor's history of bidding work, obtaining work, executing contracts, paying part of the anticipated construction costs in advance, performing the services required pursuant to the contracts, obtaining approvals for payment once certain milestones are reached, and then receiving final payment for the work. In addition, the timeline for the foregoing steps is typically about 90 to 180 days, and even shorter in some cases, and thus, the Debtor's backlog is minimal.

The Debtor identifies contract opportunities, bids are submitted, the work is awarded, and the work commences. Once started, these contracts are usually completed within a month. The Debtor has secured new contracts recently, and thus, work is picking up for 2026.

This Plan provides for payments to unsecured creditors (almost all of which are to the ACT Entities) on a payment schedule beginning with $2,000 per month on the Effective Date, and this amount will gradually increase to $3,500 (monthly) payments from March 2029 (resulting in an average payment of $2,975 per month over the course of this Plan's payment schedule), all in accordance with the filed Plan projections. These payments are the result of profits from the expected work. The company is lean and expects to stay that way. The niche carved out by the Debtor is dependent on the company maintaining its low-cost structure.

The Plan categorizes claims into four simple classes. Class 1 is unimpaired and includes priority claims (other than those that are unclassified in accordance with section 1123(a)(1) of the Bankruptcy Code). Class 1 claims are to be paid on the later of the Effective Date of the Plan or the date upon which such claim is allowed by a final, non-appealable order.

Class 2 is also unimpaired and consists of secured claims. Class 2 claimants shall receive treatment necessary to render their claims unimpaired in accordance with the Bankruptcy Code, including but not limited to reinstatement. Some portion

of the priority tax claims have been asserted by taxing authorities as secured claims. For this reason, Class 2 (Secured Claims) is included in this Plan. To avoid any double recovery as between priority tax claims and secured claims, the amount of secured claims is estimated to be $0.

Class 3 (*i.e.*, the class in which the ACT Entities' claim is classified), is impaired. Class 3 claimants are entitled to a *pro rata* share the Plan Payments to be funded monthly with the Debtor's disposable income in accordance with subchapter V of chapter 11 of the Bankruptcy Code and the Plan's projections, until such claim is fully satisfied or five years pass from the Effective Date, whichever comes first.

Finally, Class 4 claims consist of equity interests in the Debtor. Class 4 interests are unimpaired by the Plan in accordance with subchapter V of chapter 11 of the Bankruptcy Code, which permits small business owners in compliance with their debtor-in-possession and plan obligations to retain equity in a debtor notwithstanding the absolute priority rule normally applicable to non-subchapter V cases.

There are no unusual or extraordinary provisions in this Plan, such as non-consensual third-party releases or exculpations. This Plan largely tracks form subchapter V plans confirmed in cases across the country.

The State Court Action was initiated by the ACT Entities in August 2021 following a relationship of several years and at least four projects for which no complaints were made by the ACT Entities. The suit followed a request for payment of about $30,000 owed by the ACT Entities to the Debtor. The Original Petition filed by the ACT Entities was amended in October 2022, and again in February 2024. In December 2024, the Debtor filed a counterclaim together with affirmative defenses.

Ultimately, at the time the State Court Action was stayed due to the filing of the Debtor's bankruptcy case (*i.e.*, May 29, 2025), the Debtor had a pending motion for partial summary judgment on the ACT Entities' implied warranty claims, and the ACT Entities had a pending motion for summary judgment on the Debtor's counterclaims (raising the aforementioned statute of limitations defense). These issues were scheduled to be heard the week of May 30, 2025, but due to the filing of the instant bankruptcy proceeding by the Debtor, have been stayed.

Mediation was held before the Honorable Judge Isgur on December 2, 2026, which allowed for a final resolution to these competing claims within the context of a consensual plan of reorganization. This Plan (and the mediation) resolves all existing disputes as between the Debtor and its creditors, especially the ACT Entities. The agreement reached between the ACT Entities and the Debtor at mediation is memorialized in a written settlement agreement attached to this Plan as

Exhibit C and incorporated into this Plan as if fully set forth herein, as discussed in more detail in section 5.04 of this Plan.

**2.04: Class 4.** Equity interests of the Debtor.

## ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSES, PRIORITY TAX CLAIMS AND QUARTERLY AND COURT FEES

**3.01: Unclassified Claims.** Under section 1123(a)(1), allowed administrative expenses and priority tax claims are not in classes.

**3.02: Administrative Expenses.** Administrative expenses allowed under §503 of the Code will be paid in full on the Effective Date, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

**3.03: Priority Tax Claims.** Each holder of an allowed priority tax claim will be paid in full on the Effective Date, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor, or such other treatment consistent with §1129(a)(9)(C) of the Code, including but not limited to deferred cash payments over a period no longer than six years from the date of assessment and with a value equal to the allowed amount of the claim as of the Effective Date. For the avoidance of doubt, any claim filed by a taxing entity that does not (in whole or in part) qualify to be treated as an allowed priority tax claim shall be bifurcated such that the non-qualifying portion shall be treated as a Class 3 non-priority general unsecured claim; *provided* that all rights are reserved as between the Debtor and the

relevant taxing entity to dispute this characterization.  No interest shall be paid on claims filed by taxing entities.

**3.04:  Statutory Fees.**  All unpaid fees required to be paid under 28 U.S.C. §2930 that are owed on or before the Effective Date will be paid on or before the Effective Date.

**3.05:  Prospective Quarterly Fees.**  All quarterly fees required to be paid under 28 U.S.C. §1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

ARTICLE 4:  TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**4.01:  Claims and Interests Are Treated as Follows under the Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – **Priority claims** excluding those in Article 3 | Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the Effective Date, or the date on which such claim is allowed by a final non-appealable order |
| Class 2 – **Secured Claims (if any)** | Unimpaired | Class 2 is unimpaired by this Plan, and each holder of a Class 2 Secured Claim will receive such treatment as to render such claim unimpaired pursuant to the Code (including, but not limited to reinstatement) |

| Class | Impairment | Treatment |
|---|---|---|
| Class 3 – **Non-priority unsecured creditors** | Impaired | Each holder of a Class 3 non-priority unsecured claim shall be entitled to monthly payments representing their *pro rata* share of the Plan Payments (with such Plan Payments being funded on a monthly basis from the Debtor's disposable income in accordance with the payment schedule attached hereto as <u>**Exhibit B**</u>, beginning with monthly payments of $2,000 as of the Effective Date and continuing for a period of 5 years from the Effective Date).  For the avoidance of doubt, these Plan Payments shall be the exclusive source of recovery for Class 3 holders, and no Class 3 holder shall be entitled to amounts greater than their *pro rata* share of the Plan Payments.  In addition, the allowance and treatment of the Class 3 claim of the ACT Entities is consensually governed by Section 5.04 of this Plan and the mediated settlement agreement (attached to this Plan as <u>Exhibit C</u>).  As set forth in section 5.04 of this Plan, the Debtor shall have the exclusive right, in its sole and absolute discretion, to purchase the claim of the ACT Entities in accordance with the terms of this Plan.  If such right is exercised, no further Plan Payments on account of that claim will be required. |
| Class 4 – **Equity security holders of the Debtor** | Unimpaired | Equity holders of the Debtor shall retain their interests in the Debtor. |

**ARTICLE 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS**

  **5.01:  Disputed Claim.**  A *disputed claim* is a claim that has not been allowed or disallowed and as to which either:

(i)  A proof claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii)  No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02: Delay of Distribution on a Disputed Claim.** No distribution will be made on account of a disputed claim unless and until it is allowed.

**5.03: Settlement of Disputed Claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compromise with Federal Rule of Bankruptcy Procedure 9019.

**5.04: Allowance and Treatment of the Claim of ACT Pipe & Supply, Inc. and Fire Protection and Mechanical Services, LLC.** Pursuant to a Mediated Settlement Agreement dated December 2, 2025, attached to this Plan as **Exhibit C** and incorporated into this Plan as if fully restated herein, the Debtor and the ACT Entities, have agreed to the following terms relating to the ACT Entities' claim:

- The ACT Entities' claim shall be an allowed general unsecured claim in the amount of two million dollars ($2,000,000), and will be treated on a *pro rata* basis with all other Class 3 general unsecured claims. In other words, the ACT Entities will receive an amount of money each month equal to a fraction of the payment amount as set forth in the payment schedule attached to this Plan as Exhibit B, with such fraction calculated by taking the ACT Entities' total allowed claim amount (*i.e.*, $2,000,000) over a denominator consisting of the sum of all allowed Class 3 general unsecured claims. For example, if there are $2,010,000 in total allowed Class 3 claims and the monthly payment amount is $2,000, the ACT Entities shall receive the sum of $1,990.05 for that month, calculated by the following equation:

$$\frac{\$2,000,000}{\$2,010,000} * \$2,000 = \$1990.05$$

- The ACT Entities agree that they will offer to sell their allowed general unsecured claim to the Debtor or its designee at any time on or before February 28, 2028, in the amount determined by the following formula:

    - The sum of $178,500; *minus*

    - All amounts paid on or before February 28, 2028 by the Debtor to the segregated fund for Class 3 claimants in accordance with this Plan; *minus*

    - $25,000.

    The Debtor shall have the exclusive right, in its sole and absolute discretion, to purchase the claim of the ACT Entities, and may refuse to purchase the claim for any reason, or for no reason at all.

- The ACT Entities and the Debtor (and each of their respective owners, directors, officers, and managers) agree to full mutual releases, which shall become effective on the date the Plan is confirmed; *provided* that the ACT Entities and the Debtor shall each retain their respective rights under the Plan. This Plan memorializes these releases, and they are incorporated herein as an indispensable component of this Plan. The full releases are as follows:

    - Except for the rights and obligations of the Debtor, including but not limited to R. Scott Turner, to facilitate and implement the Plan, and except as otherwise provided in the Plan or in the Confirmation Order, the Debtor, its estate, and the ACT Entities, and each of their respective employees, directors, officers, and agents, including but not limited to R. Scott Turner, each are deemed forever released, to the maximum extent permitted by law, from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action (including avoidance actions), remedies, losses, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor or its estate against the ACT Entities (and their employees, directors, officers, and agents) or by the ACT Entities against the Debtor, its estate, or their employees, directors, officers, and agents, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor, its estate, the ACT Entities, or their respective employees, directors, officers, and agents, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim or interest or other person, based on or relating to, or in any manner arising from, in whole or in part, (a) the Debtor; (b) the Debtor's chapter 11 case; (c) the purchase, sale, or rescission of the purchase or sale of any security of the Debtor; (d) the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan; (e) the business or contractual arrangements between any Debtor and the ACT Entities (or their respective employees, directors, officers, and agents); (f) any litigation or

mediation currently pending between the Debtor and the ACT Entities; (g) the restructuring of any claim or interest before or during the Debtor's chapter 11 case; (h) the Plan, and related agreements, instruments, and other documents, and the negotiation, mediation, formulation, or preparation thereof; (i) the solicitation of votes with respect to the Plan; or (j) any other act or omission.

### ARTICLE 6: PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor assumes all executory contracts and unexpired leases as of the Effective Date.

### ARTICLE 7: MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan will be funded by future business income of the Debtor over a span of five years in accordance with the Code. R. Scott Turner, the sole owner and principal of the Debtor, shall remain in this capacity following confirmation of the Plan, and the Debtor is to remain in legal existence.

### ARTICLE 8: GENERAL PROVISIONS

**8.01: Definitions and Rules of Construction.** The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

**8.02: Effective Date.** The Effective Date (of the Plan) is March 1, 2026. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the day after the date on which the stay expires or is otherwise

terminated. These periods are calculated as provided in Federal Rule of Bankruptcy Procedure 9006(a)(1).

**8.03.   Severability.**  If any provision in this Plan is determined to be unenforceable, such determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.04:   Binding Effect.**  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**8.05:   Captions.**  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.06:   Controlling Effect.**  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas, Harris County govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**8.07:   Corporate Governance.**  The charter of the Debtor shall expressly prohibit the issuance of nonvoting equity securities.

**8.08:   Retention of Jurisdiction.**  The Court may exercise jurisdiction to the full extent necessary to administer this case after confirmation of the Plan and to adjudicate any related adversary proceedings or contested matters, including those

relating to the Plan, such as concerning the Plan's construction, implementation, or modification. Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by Title 28 of the United States Code.

**ARTICLE 9: DISCHARGE**

If the Debtor's Plan is confirmed under §1191(a), on the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in §1141(d)(6).

If the Debtor's Plan is confirmed under §1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in §1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in §1192;

or

(ii) excepted from discharge under §523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

|  |  |
|---|---|
|  | Respectfully submitted, |
| January 20, 2026 | **LEWIS BRISBOIS BISGAARD & SMITH** |
|  | /s/ *Bennett G. Fisher* |
|  | **Bennett G. Fisher**<br>Texas Bar No. 07049125<br>S.D. TX No. 6467<br>bennett.fisher@lewisbrisbois.com<br>24 Greenway Plaza, Suite 1400<br>Houston, Texas 77046<br>713.659.6767 \| Telephone<br>346.241.4095 \| Direct<br>713.759.6830 \| Fax |
|  | **COUNSEL FOR DEBTOR, TURNER PAVING & CONSTRUCTION, INC.** |